JOURNAL ENTRY and OPINION
The juvenile division terminated the parental rights of the father, Zachary Holyak, and granted permanent custody of his two children to the Cuyahoga County Department of Children and Family Services (agency). The father appeals (the mother did not file a notice of appeal nor is she a party to the appeal), complaining that the court's decision to grant permanent custody to the agency is unsupported by the weight of the evidence and that the court erred by not ordering that the children be placed in a planned permanent living arrangement. We have expedited our decision in this appeal in accordance with App.R. 7(C).
 I
The first assignment of error complains the court's decision to terminate the father's parental rights and grant permanent custody to the agency is against the manifest weight of the evidence. The father maintains that he completed all four objectives of the case plan that related to him; that permanent custody is not in the best interests of the children; and that the court failed to determine whether the children could be placed with him within a reasonable amount of time.
 A
The first issue is whether the agency engaged in reasonable case planning and made diligent efforts to assist the parents to remedy the problems that caused the children to be removed.
R.C. 2151.414(B) provides that a court may grant permanent custody of a child to the agency if the court determines, by clear and convincing evidence, that (1) it is in the best interest of the child to grant permanent custody of the child to the agency; and (2) the child cannot be placed with either parent within a reasonable period of time or the child should not be placed with the parents.
When a complaint for permanent custody alleges, as here, that the parent has failed to remedy the conditions that caused the children to be removed from the home, the court must first consider whether the agency made reasonable case planning and diligent efforts to assist the parents to remedy the problems that caused the children to be removed. See R.C.2151.414(E)(1); In re Anderson (Mar. 22, 2001), Cuyahoga App. No. 78140, unreported.
The agency's involvement began in March 1998 as a result of the father's alleged domestic violence and the mother's alleged alcohol abuse. Three incidents were reported in about one month's time, with the third leading to charges that the mother endangered the older boy, who was eleven months old at the time. Those charges were apparently dropped, and the agency instituted a safety plan.
In July 1998, the agency received a fourth referral. The mother and father were separated at the time, and the agency learned that the mother, whose mental stability was questionable, had left the house with the child and could not be located. The social worker then located the father, but he refused her entrance to the apartment. The social worker thought the father was drinking, and she saw six empty beer cans through the door. The father said that his wife and the older child had been staying with a friend. The social worker called the police. The police responded to the friend's house and found the child wearing a soiled diaper and smeared with his own excrement. The mother was nowhere to be found.
The agency removed the child in late July 1998, filed for temporary custody and instituted a case plan. As relevant to the father, the case plan called for him to undergo a drug and alcohol assessment, secure safe and stable housing, and establish paternity. The father did not receive the drug and alcohol assessment until January 1999 and it took five tries to make it so. This assessment showed him to be alcohol and cannabis dependent, but in remission. He was scheduled to begin treatment in February 1999, but put treatment off until May 1999. He attended treatment only five times and was discharged in July 1999 due to non-compliance. The father received another assessment in September 1999, and this time completed a two-month program and a one month follow-up that ended in December 1999.
The mother gave birth to the younger child at the end of January 1999, and the agency took immediate custody of the child because he was premature and required intestinal surgery. In April 1999, the mother spent two weeks in the hospital after suffering an acute psychotic episode related to her bi-polar disorder. Shortly after the mother's release from the hospital, both parents were told to move because the friends they were staying with became dissatisfied with the parents not paying any rent and fighting. The social worker testified that one of the friends characterized the father as a bum. The couple found an apartment in May 1999 and resided there together until the mother moved out in March 2000. The mother was living in a homeless shelter at the time of trial; the father continued to reside at the apartment.
A social worker made an unannounced visit to the father's apartment and found it littered with empty beer cans. She also found full cans of beer in the refrigerator. In another unannounced visit during a time that the father was visiting with the two children, the social worker noticed a strong odor of natural gas. The father said he blew out the pilot light on the stove, and appeared unconcerned with the gas fumes. One of the children became ill from the smell of natural gas.
The father's case plan had four objectives: a drug and alcohol assessment; follow the recommendations made as a result of those assessments; establish paternity; and obtain stable housing. While the father fulfilled these objectives, the agency had reason to suspect that he continued to abuse alcohol. This suspicion arose for two reasons. First, the social worker found that the father had stocked beer in his refrigerator and had empty beer cans all over his apartment. Second, the father failed to document his attendance at Alcoholics Anonymous meetings. As to the first cause for concern, the father tried to explain that a friend came over and drank all the beer. While that might serve to explain the empties, it did not explain why a recovering alcoholic stocked beer in his refrigerator or, more to the point, exposed himself to alcohol when he was susceptible to relapsing. As to the second cause for concern, the social worker did not believe the father's explanation that the meetings he attended did not have a sign in sheet. The court agreed with this assessment, and found that the presence of beer in the father's apartment and his failure to document attendance at Alcoholics Anonymous meetings suggested he had not complied with the case plan.
The father now argues that the agency could have made a better effort to help him complete the case plan, but we fail to see this substantiated in the record. With his suspected alcohol abuse being a continuing concern, it seems to us that he controlled his fate, and cannot now complain that his refusal to somehow distance himself from the influence of alcohol is because the agency did not do more for him.
 B
The next issue is whether permanent custody is in the best interests of the children.
R.C. 2151.414(E) sets forth guidelines for determining whether a child cannot be placed with either of his parents within a reasonable period of time or should not be placed with his parents:
 In determining * * * whether a child cannot be placed with either of his parents within a reasonable period of time or should not be placed with his parents, the court shall consider all relevant evidence. If the court determines, by clear and convincing evidence * * * that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either of his parents within a reasonable time or should not be placed with either parent.
The statute then lists various factors for the court to consider, including:
 (1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. * * *
Once the trial court finds from all relevant evidence that one of the factors exists and the child cannot or should not be placed with either of his parents, it then must consider whether permanent custody is in the best interest of the child. In re William S. (1996), 75 Ohio St.3d 95,99. In determining whether permanent custody is in the best interest of a child, R.C. 2151.414(D) requires the juvenile court judge to consider all relevant factors, including, but not limited to:
 (1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child;
 (2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 (3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies * * * for twelve or more months of a consecutive twenty-two month period * * *;
 (4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
 (5) Whether any of the factors in division (E)(7) to (11) of [R.C. 2151.414(E)] apply in relation to the parents and child.
The best interest determination and the determination that the child cannot be placed with either parent focus on the child, not the parent. In re Awkal (1994), 95 Ohio App.3d 309, 315. The discretion which the juvenile court enjoys in determining whether an order of permanent custody is in the best interest of a child should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned. Awkal,95 Ohio App.3d at 316.
The father's argument that it is in the best interests of the children to remain with him is premised primarily on his successful visitation with the children. It must be noted that the father's relationship with the children is not a deep one. The older child had been in foster care for three-fourths of his life; the younger child has never lived with either parent. So while the children may have some connection with the father, it overstates the point to call it a relationship.
But having a good relationship with the children is not enough. A child's best interests require permanency and a safe and secure environment. The court found that the father had not controlled his drinking to the point where he could provide a stable environment. In fact, the court expressed its concern that the father dragged his feet in even getting his alcohol assessment, and then failed to document his aftercare in a manner sufficient to ensure his compliance.
Other evidence showed that the father and mother may well have been interacting despite being separated. It is true that persons have the right to associate freely with whom they choose, but the father's right to associate must become subordinate to the best interests of the children. The evidence showed that the mother and father's interaction often led to fighting and sometimes allegations of domestic violence. Their stormy relationship even caused their friends to evict them. The court justifiably mentioned this point as a factor going against the best interests of the children.
Finally, the court cited to evidence showing the father's lack of concern for providing a safe environment for the children. His inability to determine that natural gas was filling his apartment is not, by itself, that crucial. But when informed of the leak, he exhibited a callous disinterest in the consequences, a fact made even more egregious because he is a smoker. In this same vein, the father did not seem to grasp even the most fundamental need to provide the children with a varied and nutritious diet. We suppose the father is correct in his assertion that he fed the children canned foods, but we must point out that the evidence actually showed that he would just basically feed them canned ravioli and canned fruit cocktail. Growing children need diets that are quite a bit different than those used in fraternity houses. The father's inability to grasp this concept did not bode well for the best interests of the children.
The court did not abuse its discretion by finding that it would be in the best interests of the children to have permanent custody vested with the agency.
 C
Lastly, the father complains that the court erred by finding that the children cannot be placed with the father within a reasonable period of time. He maintains the record is silent as to any of the factors which would prove that the children cannot be placed with the father within a reasonable amount of time.
In determining whether a child cannot be placed with a parent within a reasonable amount of time, the court must look to R.C. 2151.414(E), which sets forth fifteen specific factors, as well as directing the court to consider any other factor it deems relevant. R.C. 2151.414(E)(1) states:
 (1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.
When stating its findings orally upon the record, the court held firm to its belief that the father had not taken the steps necessary to control his drinking, thus justifying its decision that the father had not remedied the conditions that caused the children to be removed from the home:
 Again, I hate to put a guilt trip on both of you, but if you would have brought in some AA slips and complied with the AA slips, you know, maybe there would have been a different outcome. Maybe not, with all the factors involved, but there may be a different decision from me today. But if one can't do something as simple as that if you truly in fact are not drinking anymore how can one parent two young children if you can't even get notes, slips for AA meetings, to show that you went to the meeting. * * *
The court's statement clearly shows it considered that the father had not utilized the rehabilitive services available to him.
Apart from the father's drinking, the court also had some concerns that he was continuing to see the mother. The father and mother's stormy relationship caused the children to be removed, and their inability to get along, coupled with the father's drinking and the mother's bi-polar disorder, did not suggest to the court that they could sustain a harmonious relationship in the future.
With these reasons apparent on the record, we cannot find that the court abused its discretion by awarding permanent custody of the children to the agency. The first assignment of error is overruled.
 II
The second assignment of error complains the court erred by failing to order a planned permanent living arrangement, or long-term foster care, as an alternative to permanent custody. Had the court done so, the father would have retained residual parental rights.
R.C. 2151.353(A)(5) provides that, as an alternative disposition to placing the children in the permanent custody of a children services agency, the trial court may place the children in a planned permanent living arrangement only if: (1) the agency requests such a placement, and (2) the court finds, by clear and convincing evidence, that a planned permanent living arrangement is in the best interest of the child, and (3) that one of three enumerated situations is present. The only enumerated situation that might apply in this case is R.C. 2151.343(A)(5)(b), which states:
 (b) The parents of the child have significant physical, mental, or psychological problems and are unable to care for the child because of those problems, adoption is not in the best interest of the child, as determined in accordance with division (D) of section 2151.414 [2151.41.4] of the Revised Code, and the child retains a significant and positive relationship with a parent or relative.
While the mother does have significant psychological problems that render her unable to care for the children, the father does not have those same kind of problems. And since the mother is not a party to this appeal, the father cannot try to invoke procedure that would apply only for the mother. Because the father does not have some significant physical, mental, or psychological problem, the children cannot be considered candidates for a planned permanent living arrangement.
The father contends this case is very much like In re Campbell (Oct. 12, 2000), Cuyahoga App. Nos. 77552 and 77603, unreported, in which we upheld a planned permanent living arrangement when even the complaining party on appeal was forced to admit the court's decision had been a close call. The differences between Campbell and this case are manifest. In Campbell, the court found the mother and her children had retained a significant and positive relationship, while the evidence in this case showed that the father had never established a true parental relationship because the children had been removed at such an early age. Other facts in Campbell showed the mother made significant progress toward becoming a better parent, having passed all her drug screenings. In this case, the court remained unconvinced that the father had his alcoholism under control.
The court's discretion in these matters is very broad. Reynolds v. Goll (1996), 75 Ohio St.3d 121, 124. Viewing the evidence with this discretion in mind, we cannot say the court abused that discretion by finding the father did not meet the basic requirements for a planned permanent living arrangement. The second assignment of error is overruled.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court Juvenile Court Division to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
 ___________________________ MICHAEL J. CORRIGAN, JUDGE:
JAMES D. SWEENEY, J., CONCURS. TIMOTHY E. McMONAGLE, P.J., CONCURS IN JUDGMENT ONLY.